## COMMONWEALTH *versus* DAVID L. CHILD.

An indictment charged that the defendant, intending to injure the reputation of "one J. K. esquire, a member of the honorable senate of the General Court of Massachusetts aforesaid, and chairman of the committee of accounts, duly appointed thereto by the legislature of the said commonwealth, and maliciously intending to deprive the said J. K. of his offices aforesaid, and the confidence of the people of his senatorial district," framed a libel of, concerning and against J. K. and caused the same to be printed in a public newspaper, under a paragraph headed, "The new nomination in Middlesex," in the following words :— "In this committee of accounts (meaning the committee of the legislature aforesaid) which had advertised for sealed proposals for the contract of printing, the honorable chairman Mr. K. (meaning the said J. K.) proposed, before a seal was broken, that the contract should be given to the Boston Statesman, (meaning to the proprietors of that paper,) provided their proposals were not more than $ 500 higher than any others. This was no more nor less than a proposal to give $ 500 from the treasury of Mass. to that reprobated Jackson press." It was *held,* that the publication was not, on the face of it, libellous, and that the indictment could not be sustained, inasmuch as it did not aver such extrinsic facts as would render the words libellous, with a colloquium that the words were published of and concerning such facts.

AT the term of this Court in the county of Middlesex, in April 1828, an indictment was found, charging "that David L. Child, of the city of Boston, in the county of Suffolk, esquire, being a person of a malicious disposition, and wickedly intending and contriving, as much as in him lay, to injure and vilify the good name, fame, credit and reputation for honesty and integrity, of one John Keyes, esquire, a member of the honorable senate of the General Court of Massachusetts aforesaid, and chairman of the committee of accounts duly appointed thereto by the legislature of the said commonwealth, and maliciously intending to deprive the said John Keyes of his offices aforesaid, and the confidence of the people of his senatorial district, on the 29th day of March 1828, with force and arms, at Acton in the county of Middlesex aforesaid, a certain false, scandalous and malicious libel, of, concerning and against, the said John

Keyes, falsely, wickedly and maliciously, did frame and make, and did then and there cause the same false, scandalous and malicious libel to be printed, in a public newspaper, called the Massachusetts Journal, wherein, under a paragraph headed ' The new nomination in Middlesex,' among other things, the ·,aid false, scandalous and malicious libel, of and concerning the said John Keyes, is set° forth in the words, and to the effect following, to wit : ' People of Middlesex, we have gone through these troublesome details to prepare you for the fact which we are now to state. In this committee of accounts (meaning the committee of the legislature aforesaid) which had advertised for sealed proposals for the contract of printing, the honorable chairman, Mr. Keyes, ( meaning the said John Keyes,) proposed, before a seal was broken, that the contract should be given to the Boston Statesman, (meaning to the proprietors of that paper,) provided their proposals were not more than $ 500 higher than any others. This was no more nor less than a proposal to give $ 500 from the treasury of Mass. to that reprobated Jackson press.' And that the said David L. Child, on the day and year last aforesaid, with force and arms, at Acton aforesaid, in the county aforesaid, the aforesaid false, scandalous and malicious libel so as aforesaid framed, printed and published, did utter and publish, to divers good citizens of the said commonwealth, in different towns in the said county of Middlesex, to the great damage, infamy and discredit of the said John Keyes, in evil example " &c.

At October term 1828 the indictment was tried and a verdict returned in favor of the commonwealth ; whereupon the defendant moved in arrest of judgment, on the ground that no crime or offence is sufficiently charged or alleged in the indictment, to put the defendant to answer the same, or to warrant a judgment against him ; and that the indictment sets out as a libel, that which does not, upon the face of it, import to be a libel, and yet the indictment does not contain any colloquium or introductory averment, that the alleged libel was written of and concerning the extrinsic matter, which was necessary in order to make it of libellous import, and that the innuendoes, so far as they purport to introduce such extrinsic matter, cannot supply the omission of such colloquium.

Commonwealth
v.
Child.

Common-
wealth
v.
Child.

Oct. 19th,
1832.

*Fletcher* and *W. H. Gardiner* argued in support of the mo
tion, and cited 1 Chit. Crim. Law, (Engl. edit.) 17[1] *et seq.*,
442, 662, 663 ; 3 Chit. Crim. Law, 878 *et seq.* ; 2 Chit.
Pl. (Day's edit.) 256, 260, 262 ; 2 Wms's Saund. 307, note
1 ; *Holt* v. *Scholefield*, 6 T. R. 694 ; *Hawkes* v. *Hawkey*,
8 East, 427 ; *Savage* v. *Robery*, 2 Salk. 694 ; *Bloss* v. *To-
bey*, 2 Pick. 320 ; *Rex* v. *Horne*, Cowp. 672 ; *Rex* v.
*Marsden*, 4 Maule and Selw. 164 ; *Clement* v. *Fisher*, 7 Barn.
& Cressw. 459 ; *Goldstein* v. *Foss*, 2 Carr. & Payne, 252 ;
*S. C.* 6 Barn. & Cressw. 154.

*Austin* (Attorney-General,) for the commonwealth, referred
to *Rex* v. *Horne*, Cowp. 684 ; *Rex* v. *Matthews*, 15 Howell's
State Tr. 1391 ; 3 Chit. Crim. Law, 874 ; *Rex* v. *Burdett*,
4 Barn. & Ald. 314 ; *Fowle* v. *Robbins*, 12 Mass. R. 498 ;
*Commonwealth* v. *Clap*, 4 Mass. R. 163.

The opinion of the Court was afterwards drawn up by

SHAW C. J. This is an indictment for a libel tried several
years ago, and in which a verdict was returned against the de-
fendant. Various motions have been made to set aside the
verdict and grant a new trial, and also a motion in arrest of
judgment.

This motion proceeds upon the ground that no crime or
offence punishable by law is sufficiently charged in the indict-
ment to warrant a judgment, and of course, if it can be sus-
tained, must put an end to this prosecution. It is a well settled
rule of law, that the statute respecting amendments does not
extend to indictments, that a defective indictment cannot be
aided by a verdict, and that an indictment, bad on demurrer,
must be held insufficient upon a motion in arrest of judgment.
The plain rule of the common law, as well as the express pro-
vision of the Declaration of Rights, is, that no man shall be
held to answer for any crime or offence, until the same is fully
and plainly, formally and substantially made known to him,
that he may have every advantage of previous notice in making
his defence, both upon the matter of fact and law. With these
maxims in view, the Court is called upon to consider the ob-
jections taken to this indictment.

It is objected that the words charged as libellous are not such
as, in their ordinary import, have any tendency to bring the

prosecutor into public hatred, contempt or ridicule, and so are not libellous in themselves ; and that if they would bear that construction in consequence of any extraneous matter, as the existence of any fact or report, or the holding of any particular office, character or relation, by the party alleged to be libelled, or his being a candidate for any office, of such extraneous matter, fact or relation, there is no distinct averment, nor that the words written and printed related thereto.

This subject has recently undergone a careful examination and revision in this Court, and the doctrine in relation to it, laid down with exactness, and apparently with great deliberation. *Bloss* v. *Tobey*, 2 Pick. 320. It is only necessary, therefore, to ascertain the rule as settled in that case, and apply it to the present. The rule there laid down, and well supported both by reason and authority, is, that where the words do not in their natural sense and import charge the plaintiff with an indictable offence, but where it is intended to be shown and relied upon in proof, that they do bear that meaning in consequence of their referring to some other matter, such matter must be distinctly averred, with the certainty required by the rules of good pleading, in relation to facts capable of being traversed and put in issue, and proved or disproved by evidence ; and then the words must be connected with such other matter, by an averment technically called a colloquium, alleging that the words were spoken or written of and concerning such matter. The slander charged in that case was, that the defendant said of the plaintiff, that he burnt his own store. But without the existence of some other fact rendering it criminal, the burning of his own store was not a crime, and of course the imputation of it was no slander. But the real charge intended to be made was, that the plaintiff having occupied a store with goods in it, which he had procured to be insured, and which store, with the goods in it, had before that time been burnt, the defendant, speaking of such store and of the goods therein, and of the insurance upon them, said that he burnt his own store himself. It was the existence of this extraneous fact of the insurance, and the reference to it by the speaker, which gave to the words, otherwise harmless, all their significant poignancy. This would have been a manifest case

Common-
wealth
v.
Child.

of slander, within the strictest legal rule, by charging the plain-tiff with an atrocious crime punishable by law. But the aver-ment and the colloquium being wanting, there was nothing on the record by which these facts could be traversed and put in issue, and made the subject of judicial proof, and therefore the action could not be maintained.

This was the case of an action for slander ; but the Court relied principally upon the opinion of the judges as delivered by Lord C. J. *De Grey*, in *Rex* v. *Horne*, Cowp. 672, which was an indictment for libel. And the Court add, in reference to that opinion, that it gives a sensible and intelligible reason for the use of colloquiums in actions of slander ; for the same doctrine is undoubtedly applicable to actions for words, as to actions or *indictments* for libels. It is founded upon the neces-sity of certainty in the declaration, and that is one of the first requisites in pleading. Surely an equal degree of certainty is necessary in an indictment, as in a declaration in a civil action.

It has been argued by the attorney general, that the rule drawn from the action for slander does not apply, because an action for words spoken merely, will not lie, unless the words import the charge of some crime cognizable by indictment, in a secular court, and subject to some infamous punishment ; whereas words circulated in a more effective and permanent form, by writing, printing or pictures, and therefore calculated to affix a more indelible stigma upon the reputation of another, are libellous, though they impute disgraceful conduct only, not amounting to an indictable offence. This distinction certainly exists ; but it does not extend to the analogy between the two cases, to which the rule in question applies. In an action for words spoken, if the words alleged to have been spoken do in their natural meaning and import charge the plaintiff with an in-dictable offence, it is sufficient to allege the speaking of them by the defendant, with proper innuendoes, to point out the per-sons intended. But if the words do not impute an indictable offence, in their natural import, but do so in consequence of the existence, or supposed existence, of some other fact, then that other fact must be averred, in due form of pleading to be traversed, with a colloquium, alleging that the words were spoken with reference thereto.

So in an indictment ; if the words do, in their natural sense and meaning, impute to any person disgraceful conduct, though not amounting to an indictable offence, but still calculated to bring such person into public hatred, contempt or ridicule, there it is sufficient to allege the writing, printing and publication, with proper innuendoes to point the meaning to the persons ; but if such is not their natural meaning, but they will have such tendency to impute such disgraceful conduct, though still not indictable, in consequence of the existence of some fact, there it is equally necessary as in an action, to aver the fact which gives the publication its libellous character, in order that such fact may be traversed and put in issue ; it being obvious, that the guilt or innocence of the party charged, must depend upon the proof or disproof of such fact.

In testing this indictment by this rule thus established, the Court are all of opinion that it is defective and insufficient, and that no judgment against the defendant can be rendered upon it.

It is very clear, that the supposed libellous matter, written and published concerning Mr. Keyes, in his private and individual capacity, would not be libellous, and this is in effect admitted by the argument. But it is in consequence of that gentleman's public character, as a senator, and of his being a candidate for re-election, that the matter is libellous. It is, therefore, required by the rule of pleading, to be distinctly averred as a traversable fact, that he did hold that relation, together with all the circumstances which would tend to show that the fact imputed to him by the defendant was a violation of his public duty ; but such circumstances are not averred. It is not stated, except as a mere *descriptio personæ*, that he was a senator and chairman of a committee. If, as it has been assumed and intimated in the argument, Mr. Keyes was a senator and chairman of a certain committee of accounts ; and it was the duty of such committee, either by the general terms of the order under which it was appointed, or by any vote or resolution by which it was instructed and bound to be governed, to contract with some person or persons in behalf of the commonwealth, to do all or any particular part

of the printing to be done for the use of the commonwealth, for any particular time, and it was made their duty to contract with the person or persons who would do it upon the lowest terms, and to advertise for that purpose, and in pursuance of such order they had so advertised and received proposals, and it was of and concerning Mr. Keyes, in such his public capacity, and his duty aforesaid, and of such contract for public printing, that the words quoted in the indictment were written and published, — none of these facts are directly averred, and many of them are not stated or alluded to, and yet it is these facts which alone give effect to the charge as an imputation of corruption and misconduct, upon the prosecutor, as a public man and a candidate for re-election. It is not averred that the committee of accounts had any authority to make or negotiate for a contract in behalf of the commonwealth, that the contract alluded to in the article published, was a contract to be made for the commonwealth, or that the printing alluded to was the public printing. Under these circumstances, the Court are of opinion, that the indictment does not conform to the rule, and cannot be maintained.

But it has been urged by the attorney-general, that these particulars should be taken by necessary implication and intendment, upon the principle, that facts stated in an indictment are to be understood by the court and jury as the rest of mankind would understand them ; for which principle he cited *Rex* v. *Matthews*, 15 Howell's St. Tr. 1391. But it must be considered, that this principle applies to the rule of proof, and not to the rule of pleading ; and that as applied to the rule of proof it is a most reasonable and sound principle. And so the principle was applied in the case referred to, by Lord C. J. *King*, in his charge to the jury, in the passage cited. It was an indictment for a treasonable libel, under one of the statutes declaring it high treason to maintain or assert, by writing or printing, that the pretender had any right to the British crown. The indictment charged, that the words were printed " of and concerning the person in the lifetime of James the second, late king of England &c., pretending to be and taking upon himself the style and title

ot King of England, by the name of James the third." This description was held, after argument, to conform to the description in the act, and to apply to the same person to whom the act had reference. The word used in the printed libel, was " the Chevalier," with an *innuendo*, meaning the person &c., as in the above description. And when the word " chevalier " is used, or any other word, intending the pretender, is used, the same *innuendo* is added at full length. In the argument for the defendant it had been contended, that this *innuendo* was too broad ; that " *chevalier* " or knight was a common title of honor, and applied to a great variety of persons, and therefore could not be said to mean the pretender. It was in reference to this argument, that the language was used by Lord C. J. *King* as cited. "Now gentlemen," says he, " I do agree with what the counsel for the prisoner say, that by an innuendo you shall not put a meaning upon a man which is not his. This is not the case ; the case here is a positive charge, that the book he wrote relates to the pretended prince of Wales ; and the matter of fact you are to try is, whether it is so or not. Now the objection is, that you cannot understand what is meant by ' the chevalier ' to relate to him &c. I take it as to that, you are to understand it as all mankind do. You are to consider whether that book is written concerning the pretended prince of Wales &c., for the innuendo relates to a thing that is proved." And so in summing up, he leaves it to the jury, as a matter of fact averred and open to proof, to find, whether the person called the " Chevalier " in the libel, and the person called the pretender in the act of parliament, are the same, and the person commonly called the pretender.

This case, therefore, goes strongly to illustrate and support the positions before taken. It goes to show, that the law cannot be eluded by any of the artful and disguised modes, in which men attempt to conceal treasonable or libellous and slanderous meanings and designs ; that if, in truth, language is published and circulated with intent to slander and defame others, though such intent is artfully concealed by the use of ambiguous, technical or conventional terms, or

cant phrases, or in any other of the ..ousand forms in which malice attempts to disguise itself, still, if it really does mean and import the criminal character attributed to it, it shall not escape legal animadversion and punishment, if rightfully and sufficiently charged, so as to enable the jury to receive proof of all those extraneous facts and circumstances, which conspire to affix upon it such criminal character ; and that when so charged, and when the facts are proved, which give it this character, the jury are not to shut their eyes to that which all the rest of mankind can see and know and understand.   But this is perfectly consistent with the other principle insisted upon, that in order to enable the jury to receive proof of those other facts and circumstances, and to exercise their judgment upon them, they must be so distinctly averred in a traversable form, and so connected by a proper colloquium with the words of the alleged libel, as distinctly to charge the criminal and slanderous nature and effect of the libel, which alone renders it obnoxious to legal animadversion and punishment.

On the whole, the Court are all of opinion, that there is no crime or offence sufficiently charged in the present indictment, to warrant a judgment thereon, and therefore, that the judgment must be arrested.